UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN VANLEY,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. 2:12-cv-00791 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born November 20, 1967, applied for SSI benefits on July 30, 2008, alleging disability beginning November 15, 2005. Administrative Transcript ("AT") 21, 28. Plaintiff alleged he was unable to work due to chronic Pulmonary Insufficiency (COPD), back injury causing disorders of the back (discogenic and degenerative), multiple sclerosis, and emphysema with shortness of breath. AT 79, 153. In a decision dated May 13, 2010, the ALJ determined that

plaintiff was not disabled.[1]  AT 21-29.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since July 30, 2008, the application date.
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, and anemia.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

    4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) including lifting up to 50 pounds occasionally and 25 pounds frequently, and sitting, standing, and/or walking up to 6 hours in an 8-hour workday, but he has the follow (sic) restrictions: he can only occasionally bend; he can only occasionally reach overhead with the bilateral upper extremities; and he must avoid concentrated exposure to fumes, odors, dusts, gases, and areas with poor ventilation.

    5. The claimant is unable to perform any past relevant work.

    6. The claimant was born on November 20, 1967, and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

    7. The claimant has a limited education and is able to communicate in English.

    8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

    9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    10. The claimant has not been under a disability, as defined in the Social Security Act, since July 30, 2008, the date the application was filed.

AT 23-29.

ISSUES PRESENTED

  Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) The ALJ's finding that plaintiff's learning disorder is not a severe impairment is not based on substantial evidence and, in making that finding, the ALJ failed to conduct the analysis set forth in 20 CFR 416.920a; (2) the ALJ's physical residual functional capacity ("RFC") is not based on substantial evidence; and, (3) the Commissioner failed to sustain his burden of establishing that, alternatively, there is other work in the national economy that plaintiff could perform because he failed to obtain vocational expert testimony.  (ECF No. 16-1.)

/////

/////

/////

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Mental Impairment Limitations

With regard to the ALJ's finding that plaintiff's mental impairment is non-severe, plaintiff argues that the ALJ failed to conduct the analysis required by 20 C.F.R. § 416.920a and also that the ALJ's finding of non-severity is not based on substantial evidence. (ECF No. 16-1, 14.) The former issue must be addressed first because remand is required where (1) an ALJ fails to properly analyze plaintiff's mental impairment in his findings and conclusions, and (2) that error

4

is not harmless. See Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 726-27 (9th Cir. 2011). The analysis required by 20 C.F.R. § 416.920a pertains to the evaluation of mental impairments. Thus, although plaintiff argues only that the ALJ erred in finding that plaintiff's learning disorder is not a severe impairment, the ALJ's findings regarding plaintiff's depression will be discussed as well.

When making a mental impairment disability assessment at step two of the disability determination, an ALJ is bound by 20 C.F.R. § 416.920a, which requires those reviewing an application for disability to follow a special psychiatric review technique. Keyser, 648 F.3d at 726. This regulation requires those reviewing an application for disability to determine whether a medically determinable mental impairment exists, 20 C.F.R. § 416.920a(b), and rate the degree of functional limitation in four broad areas, 20 C.F.R. § 416.920a(c).[2] These steps are documented in a Psychiatric Review Technique Form ("PRTF"). 20 C.F.R. § 416.920a(e). "[T]he Social Security Regulations require the ALJ to complete a PRTF and append it to the decision, or to incorporate its mode of analysis into the ALJ's findings and conclusions." Keyser, 648 F.3d at 726. When choosing the latter method, the ALJ must make specific findings as to the degree of limitation in the four functional areas but is not required to document the considerations underlying each of those findings. Id.

Here, the ALJ did not complete and append a PRTF in making the mental impairment disability assessment. Thus, the issue is whether the ALJ properly incorporated the PRTF's mode of analysis into his findings and conclusions.

In his opposition and cross-motion for summary judgment, defendant seems to argue that the ALJ intended to find that plaintiff had no medically determinable mental impairment. (ECF No. 19, 15-16.) If this were the case, then the ALJ would not be required to incorporate the PRTF's mode of analysis into his findings and conclusions. 20 C.F.R. § 416.920a(b). However,

---

[2] The reviewer of the application, in this case the ALJ, is required to rate the degree of limitation as to (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). The first three areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The fourth area is rated on a four-point scale: none, one or two, three, and four or more. Id.

5

1   this argument runs contrary to the fundamentals of textual interpretation.  In finding that

2   plaintiff's "mental impairment . . . is non-severe within the meaning of the Regulations[,]" the

3   ALJ stated that the "evidence of record contains very little evidence of a severe mental health

4   impairment."  AT 24.  Thus, the ALJ clearly made a finding that a medically determinable mental

5   impairment exists, but that it is non-severe.  Because the ALJ determined that plaintiff had a

6   medically determinable mental impairment, the ALJ was required to rate the degree of functional

7   limitation in the four areas set forth in 20 C.F.R. § 416.920a(c).  20 C.F.R. § 416.920a(b).

8          The only evidence of plaintiff's mental impairment is provided by two reports completed

9   by Dr. Kalman.  AT 439-46.  After finding that a non-severe mental impairment exists, the ALJ

10  discussed the findings in Dr. Kalman's reports.  AT 24.  These reports consist of a "Medical

11  Source Statement," which is a check-box form concerning plaintiff's mental impairment, and a

12  written psychiatric evaluation.  Id.  The first section of the check-box form lists four work-related

13  categories relating to mental functioning to be assessed: (1) understanding and memory, (2)

14  sustained concentration and persistence, (3) social interaction, and (4) adaptation.  AT 439-42.  In

15  all, there are twenty areas of work-related mental functions to be assessed under these four

16  categories.  Id.  There are four possible marks of functional limitation for each area.  Id.  In all but

17  three of the twenty areas, plaintiff received marks indicating the least amount of limitation

18  possible – "Not Significantly Limited."[3]  AT 439-41.  In the remaining three areas, plaintiff

19  received marks indicating the second-least amount of limitation possible – "Mildly Limited."[4]  Id.

20  The next section lists work-related stressors in which Dr. Kalman marked that any of the

21  indicated stressors would increase the level of impairment beyond those indicated in the previous

22  section.  AT 441.  Dr. Kalman also marked that a routine, repetitive, simple, entry-level job

---

[3] "Not Significantly Limited" means that "[p]erformance of the designated work-related mental function is only minimally impaired, if at all."  AT 439.  It signifies that "the individual can perform this work-related function at a level equal to or greater than 90% of normal, and constantly or continuously during an 8-hour workday."  Id.

[4] "Mildly Limited" means that "[p]erformance of the designated work-related mental function is somewhat impaired."  AT 439.  It signifies that "the individual can perform this work-related function at a level equal to or greater than 80% to 85% of normal in terms of speed and accuracy, but the individual can perform the function only occasionally to frequently, (from 1/3 to 2/3 of an 8-hour workday) but not constantly or continuously."  Id.

6

1  would not exacerbate plaintiff's symptoms and that only less than once a month would plaintiff's
2  impairments be sufficiently severe to make him unable to complete a workday of a full-time job.
3  AT 442.  In the written evaluation, Dr. Kalman discusses plaintiff's illness, work, past
4  psychiatric, family, social, and environmental histories as well as his attitude and behavior,
5  intellectual functioning, affective status, thought process, and current level of functioning.  AT
6  444-446.

7  Although the contents of Dr. Kalman's reports fully encompass the four functional areas
8  listed in 20 C.F.R. § 416.920a(c)(3), it clear that an ALJ merely discussing the findings of these
9  reports without completing a PRTF and appending it to the decision, or incorporating its mode of
10 analysis and making specific findings as to the degree of limitation, is not sufficient for meeting
11 the requirements set forth in 20 C.F.R. § 416.920a.  See Gunderson v. Astrue, 371 Fed.Appx. 807
12 (9th Cir. 2010) (the regulations require the ALJ to identify and record exactly where plaintiff's
13 limitations fell along the following five-point scale – none, mild, moderate, marked, and extreme
14 – for each of those functional areas – and merely stating that plaintiff did not have any marked
15 limitations is insufficient).  Thus, the ALJ failed to make specific findings as to the degree of
16 limitation in the four functional areas as is required by 20 C.F.R. § 416.920a.  See Keyser, 648
17 F.3d at 726.

18 However, an ALJ's failure to comply with 20 C.F.R. § 416.920a is harmless if the
19 plaintiff has failed to demonstrate a colorable claim of mental impairment.  See Keyser, 648 F.3d
20 at 726-27; see also Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000).  "A colorable claim
21 [of mental impairment] is one which is not 'wholly insubstantial, immaterial, or frivolous.'"
22 Clayton v. Astrue, 2011 WL 997144, 3 (E.D. Cal. 2011) (quoting Cassim v. Bowen, 824 F.2d
23 791, 795 (9th Cir.1987)).  A mental "impairment must result from anatomical, physiological, or
24 psychological abnormalities which can be shown by medically acceptable clinical and laboratory
25 diagnostic techniques."  20 C.F.R. § 416.908.
26 /////
27 /////
28 /////

Because there is no other evidence in the record of a mental impairment, plaintiff exclusively relies on Dr. Kalman's reports in arguing that a colorable claim of mental impairment has been demonstrated. (ECF No. 16, 17; ECF No. 21,3-5.) In the check-box form, Dr. Kalman gave plaintiff marks of mild limitation for plaintiff's "ability to understand and remember detailed (3 or more steps) instructions or tasks which may or may not be repetitive," "ability to carry out detailed (3 or more steps) instructions which may or may not be repetitive," and "ability to accept instructions and to respond appropriately to criticism from supervisors." AT 440-441. These marks coincide with Dr. Kalman's notes in his written report that plaintiff "exhibited decreased memory . . . could not do serial 3's" and that "[h]is intelligence was below average." AT 445. Dr. Kalman also marked that work-related stressors would increase plaintiff's level of impairment. AT 441. In making his assertion, plaintiff also points to the GAF score of 57 assigned by Dr. Kalman, which indicates moderate symptoms or difficulties,[5] and to Dr. Kalman's diagnosis of a not otherwise specified learning disorder and a rule-out diagnosis of a not otherwise specified depression. AT 446.

Defendant argues that Dr. Kalman's reports do not form the basis of a colorable claim of mental impairment. (ECF No. 19 at 17.) Defendant contends that aspects of Dr. Kalman's reports run contrary to the record as a whole and that some of the findings are not fully supported. (Id. at 15-22.)

Although the record contains no evidence that plaintiff has a severe mental impairment outside of Dr. Kalman's reports, there is evidence in the record that plaintiff does not have a mental impairment at all. At the hearing, plaintiff denied having depression and denied that his fear or nervousness caused by being around other people would impact his ability to perform work. AT 56-57, 70. Plaintiff did not allege a disabling mental impairment, or anything relating to such impairment, in his application for disability benefits. AT 152-59. Also at the hearing,

---

[5] GAF stands for Global Assessment of Functioning, which is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A 51-60 rating indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

plaintiff's attorney made no mention of a mental impairment upon discussing the combination of plaintiff's impairments, which were all physical in nature. AT 72. Lastly, none of the records from plaintiff's participation in the ALLIES II program held at San Joaquin Behavioral Health indicate a diagnosis or assessment of any mental impairment by an acceptable medical source. AT 374-437.

Even in assessing Dr. Kalman's reports in isolation, the diagnoses of unspecified learning disorder and rule-out unspecified depression is barely supported, if at all. Dr. Kalman's written report contains no compelling, objective evidence of a mental impairment aside from notes relating to plaintiff's below average intelligence, his poor memory, and that plaintiff does not like to be around people because he gets nervous. AT 444-45. However, in the mental status examination, Dr. Kalman also noted that plaintiff displayed the ability to do simple math, has fair judgment, and has a form of thought that is logical and goal oriented. AT 445. Also, Dr. Kalman's written report notes that plaintiff denied having depression, being hospitalized for psychiatric reasons, receiving any outpatient psychiatric treatment, or having a family history of mental illness. AT 444. Additionally, the written report indicated a fairly normal family, social, and environmental history and currently a normal level of functioning. Id. Lastly, Dr. Kalman's GAF assessment in the written evaluation that indicates moderate symptoms or difficulties runs contrary to his findings in the check-box report where he did not once assign a moderate or marked limitation in any of the twenty listed categories. AT 439-41, 446. In fact, in seventeen of the twenty categories Dr. Kalman marked that plaintiff is not significantly limited, which means that performance of the designated work-related mental function is only minimally impaired, if at all. AT 439-41. Dr. Kalman also noted that plaintiff's impairments may only prevent him from completing a workday in a full-time job less than once a month. At 442. This finding was made after Dr. Kalman's assessment that some work related stressors could increase the level of impairment beyond "Not Significantly" or "Mildly" limited.

/////
/////
/////

9

As it pertains to establishing a colorable claim of mental impairment, plaintiff's claim, which relies exclusively on Dr. Kalman's reports while ignoring other aspects of the record, is wholly insubstantial. Because plaintiff failed to provide adequate evidence of plaintiff's mental impairment, it is not similar to previous decisions finding that an ALJ's failure to comply with 20 C.F.R. § 416.920a was not harmless. See Selassie v. Barnhart, 203 Fed.Appx. 174 (9th Cir. 2006) (legal error was not harmless where plaintiff was diagnosed with post-traumatic stress disorder by two treating therapists, one of whom found it severe enough to cause plaintiff extreme difficulty in holding down regular work.); see also Keyser, 648 F.3d at 726-27 (failure to comply with 20 C.F.R. § 416.920a was not harmless where plaintiff was diagnosed with bipolar disorder, and paranoid and schizotypal personality traits, there was supporting testimony of plaintiff's mental impairments, there was evidence that the mental impairments would impact her ability to work, plaintiff was given moderate limitations in several areas, and plaintiff was given a corresponding GAF score of 55 to 65).

Because plaintiff relies on reports that contain unsupported conclusions and are partially contradictory, the claim is also immaterial. The GAF score Dr. Kalman assigned to plaintiff in his written report runs contrary to the limitation assignments in the check-box form. Moreover, Dr. Kalman's diagnosis of rule-out unspecified depression is contrary to plaintiff's own statements at the hearing and during Dr. Kalman's examination. Likewise, Dr. Kalman's diagnosis of an unspecified learning disorder is only supported by a showing of memory issues and that plaintiff said he was in "slow classes." Also, because plaintiff did not allege a disabling mental impairment in his application for disability benefits and denied having depression multiple times, plaintiff's claim is seemingly frivolous.

Plaintiff has failed to demonstrate a colorable claim of mental impairment. Therefore, that the ALJ failed comply with the requirements set forth in 20 C.F.R. § 416.920a is a harmless error that does not require remand.

/////

/////

/////

Furthermore, it cannot be argued that the ALJ's finding of a non-severe mental impairment was not based on substantial evidence. The plaintiff denied having depression and that his fear or nervousness caused by being around other people would impact his ability to perform work. In eleven categories of the check-box form pertaining to understanding and memory, and sustained concentration and persistence, Dr. Kalman gave plaintiff nine marks of "Not Significantly Limited" and only two of "Mildly Limited," yet plaintiff's poor memory and low intellectual functioning were the only evidence supporting a diagnosis of unspecified learning disorder. This evidence is certainly substantial in that it is more than a mere scintilla of evidence supporting the ALJ's conclusion. Connett, 340 F.3d at 873. Thus, this substantial evidence supports the ALJ's findings that any mental impairment caused by depression or a learning disorder is only a slight abnormality that would have no more than a minimal effect on plaintiff's ability to work, and is thus non-severe. 20 C.F.R. § 416.921.

B. Residual Functional Capacity

Plaintiff contends the ALJ erred in formulating plaintiff's residual functional capacity because the finding is not based on substantial evidence. (ECF No. 16-1, 17-21.) Plaintiff asserts that the ALJ assigned great weight to consultative physician Dr. Brimmer's opinion although she did not have the benefit of reviewing a complete record. Id. Plaintiff also opines that new evidence submitted to the Appeals Council after the ALJ's finding of non-disability does not support the ALJ's finding. Id.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). An individual's residual functional capacity is "based on all the relevant evidence in [the individual's] case record." Id.

/////

/////

/////

11

As stated above, the ALJ assessed plaintiff's RFC at the medium exertional level, including lifting up to 50 pounds occasionally and 25 pounds frequently, and sitting, standing, and/or walking up to 6 hours in an 8-hour workday. AT 25. The ALJ restricted plaintiff's RFC in that he can only occasionally bend, he can only occasionally reach overhead with the bilateral upper extremities, and he must avoid concentrated exposure to fumes, odors, dusts, gases, and areas with poor ventilation. Id. To support his conclusions, the ALJ found that the record contains evidence suggesting that plaintiff has not been entirely forthright with respect to his symptoms, limitations, and history. AT 26-27. He also found that, in light of the objective medical evidence, the plaintiff's allegations that he is unable to sustain the physical demands of competitive employment due to emphysema and back pain are less than fully credible. AT 26.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). Here, the ALJ discussed reports by Drs. Brimmer, Kalman, and Yavrouian that either independently or when compared with other medical reports display plaintiff's lack of credibility.

Dr. Brimmer noted in her October 20, 2008 examination report that plaintiff was evasive and vague, leaving her the impression that he may not have been entirely candid. AT 271. In this examination with Dr. Brimmer, plaintiff denied a history of drug, alcohol, or tobacco use. AT 272. Also, on December 28, 2009, in plaintiff's psychiatric evaluation with Dr. Kalman, plaintiff denied the use of drugs, including marijuana, since ten years prior to the evaluation. AT 445. However, plaintiff admitted to using marijuana to a triage nurse on December 20, 2004 and to Dr. Yavrouian on January 28, 2005. AT 302, 309. Plaintiff reported to Dr. Yavrouian that the MS diagnosis was made about two years prior to the examination. AT 302. Plaintiff later informed Dr. Brimmer that he was diagnosed with multiple sclerosis fifteen years prior to the examination date. AT 272. Plaintiff's reports of multiple sclerosis are not substantiated by any medical report

or other objective evidence in the record. Also, plaintiff reported to Dr. Kalman that he was last incarcerated (for selling drugs) in 1988, AT 444, but medical records from the San Joaquin County Jail indicate that the claimant was released from jail as recently as March of 2008. AT 250. Lastly, plaintiff reported to Dr. Kalman that he last worked in 1993, but the ALJ found that his work history indicated that he worked as recently as 2006. AT 27. Plaintiff has not contested any of these findings. Thus, the ALJ's finding that "the information provided by claimant generally may not be entirely reliable" and his reliance on the objective medical evidence is based on substantial evidence in the record. AT 27.

At the hearing, plaintiff said that he did not have multiple sclerosis, but that his bones, joints, and back hurt and ache badly. AT 55. Plaintiff stated that strenuous activity, such as walking to the mailbox, caused his breathing to worsen but that when he uses his inhaler his lungs feel a lot better. AT 63-64. He said that along with his breathing, his back prevents him from working because he can't sit for more than 20-25 minutes or stand for more than 25 minutes before his back starts hurting. AT 64. However, plaintiff said that the back pain would not be disabling or debilitating if he had to sit for 50 minutes. AT 70. The ALJ cited objective evidence, including multiple medical records and findings from Dr. Brimmer's report, in finding that these allegations pertaining to his inability to work due to emphysema and back pain are less than fully credible.

As it pertains to plaintiff's allegations regarding emphysema, the ALJ noted that there were records from November 19, 2008 through May 8, 2009 indicating that plaintiff had moderate obstructive airway disease, bilateral wheezes, diffuse wheezing, and significant bullae in the apical regions bilaterally. AT 26. The ALJ also noted that plaintiff had been prescribed albuterol, given a course of Prednisone, and was given a nebulizer treatment. Id. However, the ALJ also noted that on February 24, 2010, plaintiff "underwent repeat pulmonary function testing which documented improvement since November of 2008." Id. Again, plaintiff does not dispute these findings. Plaintiff does point out a January 2, 2002 spirometry report that states "Lung Age: 99 years[,]" AT 337, but plaintiff fails to explain its relevance in light of plaintiff's admitted marijuana use after that time and the February 24, 2010 repeat pulmonary function testing which

13

indicated improvement. Based on this objective evidence, the ALJ found that plaintiff has chronic obstructive pulmonary disease.

As it pertains to plaintiff's allegations regarding back pain, the ALJ noted that during Dr. Brimmer's October 20, 2008 physical examination, plaintiff was able to rise from a seated position and move about the room without difficulty, and that straight leg raising, strength, and sensory tests were entirely normal. AT 26. The ALJ noted that in this examination plaintiff had back spasms, tenderness, some range of motion deficit, and restricted range of motion in the bilateral shoulder joints. Id. The ALJ also noted that on October 15, 2009, plaintiff complained of lower back pain and had tenderness in his back, but that no muscle spasms were found and straight-leg raising tests were normal. Id. Lastly, the ALJ discussed plaintiff's visit to Ambulatory Care Services where he was seen for back pain, prescribed Tylenol #4, and encouraged to do back exercises. Id. Again, plaintiff does not dispute these findings. The ALJ stated that although there was a scarcity of radiological evidence of degenerative disc disease, he found that based on the other objective evidence plaintiff's back pain significantly limited his ability to work. Id.

Upon finding that plaintiff retains the ability to perform a wide range of medium work, the ALJ assigned great weight to Dr. Brimmer's opinion and noted that Drs. Jansen and Rubaum came to the same conclusion as Dr. Brimmer regarding plaintiff's functional limitations. AT 27-28. The ALJ also stated that Dr. Brimmer's conclusions are supported by medical explanation and are consistent with the findings from her clinical examination. Id. Plaintiff disputes the assignment of great weight to this opinion because Dr. Brimmer did not have the opportunity to review subsequent medical records before making her conclusion. (ECF No. 16-1, 18.) However, plaintiff does not argue that Dr. Brimmer's conclusions are inconsistent with her clinical findings or that the ALJ reviewed and discussed these subsequent medical records in making his findings. Plaintiff also failed to convincingly argue how these subsequent medical records would have changed Dr. Brimmer's conclusions. In particular, the February 24, 2010 repeat pulmonary function testing, testing that Dr. Brimmer stated should be undertaken in her report (see AT 274), indicated improvement in plaintiff's symptoms from a previous test taken in

1    2008. Plaintiff argues that the January 2, 2002 spirometry report, which describes plaintiff's

2    lungs as "Lung Age: 99 years[,]" would have affected Dr. Brimmer's opinion, but this conclusion

3    is doubtful given the results of the 2010 test.

4    Finally, plaintiff argues that the July 15, 2010 Residual Functional Capacity Questionnaire

5    from Dr. Abatecala undermines the ALJ's conclusions. AT 464-68. After the ALJ's decision,

6    plaintiff submitted this document to the Appeals Council, which it made part of the record upon

7    denying plaintiff's request for review. AT 1-4; see Brewes v. Comm'r of Soc. Sec. Admin, 682

8    F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding

9    whether to review a decision of the ALJ, that evidence becomes part of the administrative record,

10   which the district court must consider when reviewing the Commissioner's final decision for

11   substantial evidence") (citation omitted).

12   The Appeals Council assigned Dr. Abatecola's assessment little weight after finding that it

13   was not supported by objective medical findings and other medical opinions in the record. AT 2.

14   Dr. Abatecola diagnosed plaintiff with multiple sclerosis, but neglected to provide any objective

15   support for this conclusion. AT 464-68. Plaintiff's records do not contain any clinical evidence

16   of multiple sclerosis and, as mentioned above, at the hearing plaintiff denied having multiple

17   sclerosis. Dr. Abatecola also listed peripheral neuropathy as another diagnosis, but admitted that

18   there was no etiology found. AT 464. Defendant's argument that Dr. Abatecola's opinion is only

19   consistent with plaintiff's subjective reporting, which has been found to be less than credible, is

20   convincing based on the entire record. Thus, this court concludes that even with consideration of

21   the additional records, substantial evidence supports the ALJ's decision that plaintiff is not

22   disabled.

23   C.  Grids

24   Plaintiff claims the ALJ erred in employing the Medical-Vocational Guidelines ("the

25   grids") in light of the limitation that plaintiff can only occasionally bend, can only occasionally

26   reach overhead with his bilateral upper extremities, and has environmental limitations. (ECF 16-

27   1, 21.) The grids categorize jobs by their physical-exertional requirements (e.g., sedentary, light

28   and medium) and present various combinations of factors the ALJ must consider in determining

15

the availability of work that the claimant can perform. See 20 C.F.R. pt. 404, subpt. P, App. 2; see generally Desrosiers v. Sec. of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include the claimant's residual functional capacity, age, education, and work experience. Id. For each combination, the grids direct a finding of either "disabled" or "not disabled." Id.

Because the grids are merely an administrative tool to resolve individual claims that fall into standardized patterns, there are limits on when the ALJ may rely on them. "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." See Jones, 760 F.2d at 998, Desrosiers, 846 F.2d at 578; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may also rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if the nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[6] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell, 947 F.2d at 345-47; Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (requiring significant nonexertional impairments in order to depart from the grids). In borderline cases, the ALJ must not apply the grids mechanically. Jones, 760 F.2d at 998.

Here, the ALJ found that plaintiff was able to "perform medium work as defined in 20 CFR 416.967(c)" but that "he can only occasionally bend; he can only occasionally reach overhead with the bilateral upper extremities; and he must avoid concentrated exposure to fumes, odors, dusts, gases, and areas with poor ventilation." AT 25. The ALJ explained that these

---

[6] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Nonexertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c)(2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

16

limitations have little effect on the occupational base of work for which plaintiff is qualified, thereby justifying the absence of vocational expert testimony. See Penny, 2 F.3d at 958-59 (only severe limitations on the claimant's functional capacities in ways not contemplated by the grids requires vocational expert testimony).

The functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work. 20 C.F.R. pt. 404, subpt. P, App. 2, § 203.00. The grids with plaintiff's vocational profile for both light and sedentary work would mandate a finding of non-disability. AT 28; See Id., Rules 201.24, 202.17. Although SSR 83-10, 83-14, and 85-15 state that the non-exertional limitations set forth in the ALJ's RFC finding would affect a medium occupational base, they would not significantly affect the light or sedentary bases. For example, the RFC restriction to occasional bending during a normal workday leaves plaintiff's light occupational base intact. See SSR 83-14 (most light work "implies that the worker is able to do occasional bending of the stooping type); see also SSR 85-15 (the sedentary and light occupational base is virtually intact when a person can occasionally stoop in order to lift objects). The ALJ's restrictions on plaintiff's capacity to tolerate "concentrated exposure" to respiratory irritants also minimally impact plaintiff's light occupational base. See SSR 85-15 (a medical restriction to avoid excessive amounts of "noise, dust, etc." minimally impacts a person's occupational base). Finally, while SSR 83-10 and 83-14 hold that light work typically requires the use of arms and hands to grasp, hold, and turn objects, these rulings do not state that restrictions on occasional overhead reaching would impact a person's occupational base.

Because the postural, manipulative, and environmental restrictions contained in the ALJ's residual functional capacity finding do not significantly affect plaintiff's sedentary occupational base, see SSR 83-10, SSR 83-14; SSR 96-9p, any error by the ALJ is harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("we have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'") (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)).

/////

/////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted; and

3. Judgment is entered for the Commissioner.

Dated: June 17, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

CKD: 33
CM/Attorneys/"33"/CKD/vanl0791.ssi.ord